# Exhibit 1



**TEXAS HEALTH AND HUMAN SERVICES COMMISSION**

MEDICAID SUPPLEMENTAL PAYMENT PROGRAM
CERTIFICATION OF HOSPITAL PARTICIPATION

**TPI Number:**

**On behalf of**                          **, a privately owned and operated hospital licensed and in good standing under the laws of the State of Texas ("Hospital"), I,**                   **, affirm and certify the following:**

1. *Authorization.*

    a. Hospital is a party to an Indigent Care Affiliation Agreement ("Affiliation Agreement") that was entered into between _____ ("Governmental Entity") and Hospital and/or a group of private hospitals that provide uncompensated care in the communities served by the Governmental Entity (the "Affiliated Hospitals").

    b. As a qualified private hospital that is affiliated with the Governmental Entity, Hospital receives supplemental Medicaid payments ("Supplemental Payments") from the Health and Human Services Commission ("HHSC") pursuant to either or both Section (z) of Attachment 4.19-A and Section (8) of Attachment 4.19-B of the Texas Medicaid State Plan and pursuant to the regulations at 1 Tex. Admin. Code. §355.8070 (the "Supplemental Payment Program").

2. *Assurances and Representations.*

    a. *Validity of Claims.* All claims filed by Hospital for Supplemental Payments have complied and will comply with the applicable regulations regarding the Medicaid upper limit provisions at Title 42, Code of Federal Regulations, Part 447, sections 447.272 and 447.321.

1

Health & Human Services Commission
Private Hospital Certification
v20110621-PH_UPL_HE Cert

Texas Medical Assistance Program
Private Hospital Upper Payment Limit
Supplemental Reimbursement Program

b.  *Use of Supplemental Payments.*

   i.   No funds derived from any Supplemental Payment received by Hospital have been or will be returned or reimbursed to the Local Governmental Entity.

   ii.  No other funds have been used to reimburse the Local Governmental Entity in consideration of any supplemental funds paid to Hospital.

   iii. Hospital will not use any of the Supplemental Payments to fund any contingent fee arrangement or agreement or to pay for third-party consultant or legal services.

c.  *Agreements with Governmental Entity.*

   i.   Hospital has not entered and will not enter into any agreement with the Governmental Entity to condition either the amount of the Public Funds transferred by the Governmental Entity or the amount of Medicaid supplemental payments Hospital receives on the amount of indigent care Hospital has provided or will provide;

   ii.  Hospital has not entered and will not enter into any agreement with the Governmental Entity to condition the amount of Hospital's indigent care obligation on either the amount of Public Funds transferred by the Governmental Entity to HHSC or the amount of Supplemental Payment Hospital may be eligible to receive;

   iii. Neither Hospital nor any other entity acting on behalf of an Affiliated Hospital or group of Affiliated Hospitals has made or agreed to make cash or in-kind transfers to the Governmental Entity other than transfers and transactions that:

   (1) Following the date this Certification was executed, are unrelated to the administration of the Supplemental Payment Program and/or the delivery of indigent care services under an affiliation agreement;

   (2) Constitute fair market value for goods and/or services rendered or provided by the Governmental Entity to Hospital; and

   (3) Represent independent, bona fide transactions negotiated at arms-length and in the ordinary course of business between Hospital and the Governmental Entity;

d.  *Assignment/Assumption of Governmental Entity Obligations.*

2

    i.   Except as specified in paragraph 2.c.iii above, neither Hospital nor any other entity acting on behalf of an Affiliated Hospital or group of Affiliated Hospitals has, following the date this Certification was executed:

        (1)  Taken assignment or agreed to take an assignment of a contractual or statutory obligation of the Governmental Entity; or

        (2)  Authorized or consented to the assumption of a statutory or contractual obligation of the Governmental Entity by an Affiliated Hospital or any other entity acting on behalf of an Affiliated Hospital or group of Affiliated Hospitals.

    ii.  In the event that Hospital had taken assignment of or assumed a contractual or statutory obligation of the Governmental Entity prior to the date of this Certification, Hospital will terminate the terms of such assignment or assumption no later than 120 calendar days after the date of this Certification.

e.   *Use of Financial Mechanisms.* With regard to any escrow, trust or other financial mechanism (an "Account") utilized in connection with an indigent care affiliation agreement or an IGT issued for a payment period that occurs after the effective date of this Certification, the following representations are true and correct:

    i.   The amount of any Account is not conditioned or contingent on the amount of indigent care services that an Affiliated Hospital provided or will provide;

    ii.  The Governmental Entity has disclosed the existence of any Account to HHSC; and

    iii.  Any such Account will not be used to affect a quid pro quo for the provision of indigent care services by or on behalf of the Affiliated Hospitals.

**3.  *Deferral or Disallowance of Federal Financial Participation.***

a.   If the Centers for Medicare and Medicaid Services ("CMS") of the United States Department of Health and Human Services or any other lawful authority disallows, defers, or otherwise rejects, in whole or in part, a claim for federal financial participation based on a claim submitted by Hospital to HHSC for health care services provided under the Affiliation Agreement, HHSC will have the right, by set-off or recoupment, to recover the amount disallowed, deferred, or rejected by CMS, subject to Hospital's rights of administrative appeal.

b.   The set-off and/or recoupment may include any interest, fees, or sanctions assessed by CMS as a result of late repayment to CMS.

3

Health & Human Services Commission                          Texas Medical Assistance Program
Private Hospital Certification                                  Private Hospital Upper Payment Limit
v20110621-PH_UPL_HE Cert                             Supplemental Reimbursement Program

4.  ***Public Access to Affiliation Agreement.*** Copies of the Affiliation Agreement shall be made available as provided under the Public Information Act (Chapter 552, Government Code) and will be provided to HHSC on request.

On behalf of Hospital, I hereby certify that I have read and understood the above statements; that the statements are true, correct, and complete; and that I am authorized to bind Hospital, and to certify to the above.

_____          _____

Signature                                                                                         Date

_____

Name and Title (print or type)

4

# Exhibit 2



# AMS CONTRACT

June 30, 2011



**Harris County Hospital District**

*Where People Come First.*

Ben Taub General Hospital • Lyndon B. Johnson General Hospital • Quentin Mease Community Hospital • Community Health Program

# History of AMS Contract

o AMS is a 501(c)3 comprised of UTHSC and BCM, formed to contract with HCHD in 1989

o Required anti-trust exemption from the Texas State Legislature

o 20 year Agreement

o Renegotiated in 2007, effective June 30, 2008

HCHD-Where People Come First.

Harris County
Hospital District

# History of AMS Contract

o Previous contract:

- Paid for fixed full time equivalents (FTEs)
- No requirement for faculty attendance
- No requirement for production
- No incentive for collections
- No transparency of information
- Closed medical staff
- Replaced June 30, 2008

HCHD-Where People Come First.

3

Harris County
Hospital District

# History of AMS Contract

o Current contract:

- Contract between to AMS and HCCS

- HCHD became HCCS's operating manager

- 5 year term with annual "evergreen"

- Allows for payments based on quality

- No requirement to use AMS to staff new facilities

- Schools required to use "best effort" for collections

HCHD–Where People Come First.

4

Harris County
Hospital District

# History of AMS Contract

o Current contract:

- Faculty compensation equals:
  - ➤ Salaries, fringes and call
  - ➤ Plus 18% of compensation as overhead
  - ➤ Less schools' collections

- "Risk adjusted" by Production Risk Corridor
  - ➤ Based on relative value units (RVUs)
  - ➤ Based on service line, not individual production

HCHD–Where People Come First.

Harris County
Hospital District

5

# History of AMS Contract

o Current contract:

- "Risk Adjusted" by Production Risk Corridor

  ➢ +/- 15%, based on Academic National MGMA Production Survey (rolling 3 year average of median)

  ➢ If Service Line produces at median, then 100% of salaries and fringes paid

HCHD–Where People Come First.

6

Harris County
Hospital District

# History of AMS Contract

o Current contract:

- Leadership paid separately
  - ➤ Based on salary and fringes for FTE fraction, plus 18% overhead
- GME paid separately
- More transparency of data
- No requirement to use AMS to staff new facilities (El Franco Lee)

HCHD-Where People Come First.

Harris County
Hospital District

# Benefits of Current Contract

o Better charge capture
o Faculty Production (RVUs) increased:

| | 2007 | 2008 | 2009 | 2010 |
|---|---|---|---|---|
| UT | 641,746 | 752,782 | 831,733 | 944,713 |
| BCM | 1,029,011 | 1,123,876 | 1,163,179 | 1,540,712 |
| TOTAL | 1,670,757 | 1,876,658 | 1,994,912 | 2,485,424 |

HCHD-Where People Come First.

Harris County
Hospital District

8

# Benefits of Current Contract

o Faculty more engaged – clinical FTEs:

| | 2007 | 2008 | 2009 | 2010 |
|---|---|---|---|---|
| UT | 197.29 | 197.29 | 194.90 | 220.72 |
| BCM | 323.34 | 323.34 | 314.88 | 365.88 |
| TOTAL | 520.63 | 520.63 | 509.78 | 586.61 |

Harris County
Hospital District

HCHD–Where People Come First.

9

# Annual Costs

(in thousands)

| | | 2007 | 2008 | 2009 | 2010 |
|---|---|---|---|---|---|
| **FACULTY** | UT - Clinical | $36,351 | $36,351 | $27,663 | $31,959 |
| | Overhead | $342 | $342 | $8,527 | $9,355 |
| | Salary Mkt Adj.* | | | $9,590 | $9,590 |
| | **Total** | **$36,693** | **$36,693** | **$45,780** | **$50,904** |
| | BCM - Clinical | $49,239 | $49,239 | $33,841 | $49,124 |
| | Overhead | $297 | $297 | $14,400 | $16,111 |
| | Salary Mkt Adj.* | | | $28,591 | $28,591 |
| | **Total** | **$49,536** | **$49,536** | **$76,832** | **$93,826** |
| **RESIDENTS** | UT | $10,146 | $10,764 | $10,873 | $12,061 |
| | BCM | $20,373 | $20,164 | $21,377 | $22,022 |
| | **Total** | **$30,519** | **$30,928** | **$32,250** | **$34,083** |
| **TOTALS** | UT | $46,839 | $47,457 | $56,653 | $62,965 |
| | BCM | $69,909 | $69,700 | $98,209 | $115,848 |
| | | **$116,748** | **$117,157** | **$154,862** | **$178,813** |
| | *estimated | | | | |

HCHD–Where People Come First.

10

Harris County
Hospital District

# Additional HCCS Subsidy

| | | 2007 | 2008 | 2009 | 2010 |
|---|---|---|---|---|---|
| BCM | FACULTY | $0 | $0 | $796,356 | $884,604 |
| | GME | $0 | $0 | $1,127,544 | $1,382,808 |
| | TOTAL | $0 | $0 | $1,923,900 | $2,267,412 |
| UT | FACULTY | $0 | $0 | $692,400 | $692,400 |
| | GME | $0 | $0 | $1,038,600 | $1,038,600 |
| | TOTAL | $0 | $0 | $1,731,000 | $1,731,000 |
| TOTALS | FACULTY | $0 | $0 | $1,488,756 | $1,577,004 |
| | GME | $0 | $0 | $2,166,144 | $2,421,408 |
| | TOTAL | $0 | $0 | $3,654,900 | $3,998,412 |

HCCS Data



HCHD-Where People Come First.

11

Harris County
Hospital District

# Issues with Current Contract

o Collection Risk

o Medical Director Compensation

o Medically Unnecessary Procedures

o Call Pay Compensation

o Medical Leadership and Faculty Incentives

o AMS/Academic Model "Fit"

o Difference in interpretation of contract terms

HCHD–Where People Come First.

12

Harris County
Hospital District

# Collection Risk

o Schools' investment(s) in Revenue Cycle increase their expenses, with no increase in revenue

o Results in subsidy of schools collections

HCHD-Where People Come First.

13

**Harris County
Hospital District**

# Medical Director Compensation

o Pay based upon fraction of FTE devoted to leadership (salary, fringes plus overhead)

o No requirement for clinical time commitment

o Directors paid differently between schools, because salaries and fringes are different

o No similar methodology in Houston market; none found nationally

HCHD–Where People Come First.

14

Harris County
Hospital District

# Medical Director Compensation

o Medical Director Pay is high focus compliance target, nationally

o Must be at FMV for time of physician

o Typically paid as monthly or annual stipend

o Typically paid according to local or national survey data, as indicators of FMV

o Must include time-keeping (done currently)

HCHD-Where People Come First.

15

Harris County
Hospital District

# Medically Unnecessary

o No dis-incentive for, or incentive to avoid Medically Unnecessary:

- Admissions
- Procedures and tests
- Inpatient days
- Referrals
- Test interpretation delays

HCHD-Where People Come First.

Harris County
Hospital District

# Call Pay Compensation

o Methodologies not consistent between schools

o Methodologies not consistent within each school

o Various methodologies typically employed, appropriate to service line, but based upon local or national surveys

HCHD–Where People Come First.

17

Harris County
Hospital District

# Medical Leadership & Faculty Incentives

o Leadership/Faculty not yet incented for:

- quality metrics

- resource utilization metrics

- customer service metrics

o Current environment <u>needs</u> focus on all the above

o ACO environment, as currently defined, <u>requires</u> focus on all the above

HCHD-Where People Come First.

18

Harris County
Hospital District

# AMS/Academic Model "Fit"

o Greater input needed on selection of Medical Leadership

- To move to "ACO" model

o Greater flexibility on how facilities are staffed needed

- To fill vacancies quicker

- To change staffing models to fit changing customer needs

19

Harris County
Hospital District

# AMS/Academic Model "Fit"

o Independent contractors vs. employed physicians

o Collections, salaries, fringes - transparency

o Managed Care contracting

o School cooperation, central coordination

o Usefulness in ACO environment

o Education vs. service

HCHD-Where People Come First.

20

Harris County
Hospital District

# Interpretation of Contract Terms

o BCM invoices not furnished in format specified

o Both Audits found it difficult to obtain supporting documentation and audit

HCHD-Where People Come First.

21

Harris County
Hospital District

# Next Steps

Change methodology from "Cost Based" to "ACO Compatible," i.e. pay schools based upon quality, resource and customer service metrics, by January 1, 2012 (announced date for first phase of implementation of ACOs)

HCHD-Where People Come First.

22

Harris County
Hospital District

# Next Steps

o Eliminate collections risk by benchmarking schools, based upon national survey data (July 1, 2011)

o Pay Medical Directors according to national survey data

o Include basic disincentives for unnecessary use of resources (tests, admissions, etc.); add more, over time, to prepare for ACOs

HCHD-Where People Come First.

23

Harris County
Hospital District

# Next Steps

o Pay for Call consistently, by service line across both schools, benchmarked to national surveys

o Incent leadership/faculty based upon quality, resource and customer service metrics

HCHD-Where People Come First.

24

Harris County
Hospital District

# Next Steps

o Increase ability of HCHD to:

• Select Medical Leadership

• Fill vacancies, if not filled by AMS within reasonable time

• Change staffing models and move resources to accommodate patients

• Employ providers where "AMS/academic model" does not satisfy needs of patients

HCHD-Where People Come First.

25

Harris County
Hospital District

# Next Steps

- Clarify contract terms
  - ➢ Show calculation detail on invoices
  - ➢ Use proper invoice format
  - ➢ Define "Fringes"
  - ➢ Provide supporting documentation (source documents)

HCHD-Where People Come First.

26

**Harris County Hospital District**

# Discussion

## Status of Schools Assumption of Collection Risk

HCHD–Where People Come First.

27

Harris County
Hospital District

# Options

Do Nothing:

- Pros:
  - ➤ Easiest path
  - ➤ HCHD has organized an active PIT to help AMS improve their revenue cycles
  - ➤ BCM hired a turnaround team
- Cons:
  - ➤ HCHD has a fiduciary responsibility to use resources appropriately
  - ➤ May not be politically viable

HCHD–Where People Come First.

28

Harris County
Hospital District

# Options

Reduce IGT payments equal to collection deficits:

- Pros:
  - ➤ Good stewards of taxpayers' money
  - ➤ Politically correct
- Cons:
  - ➤ A fair benchmark for calculating deficits must be determined
  - ➤ Strains school partnership
  - ➤ Strains HCCS partnership

HCHD–Where People Come First.

Harris County
Hospital District

# Exhibit 3

