# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES and the STATE of TEXAS, ex rel. KENT VAUGHN, | |
| Plaintiffs, | Case No. 4:17-cv-02749 |
| v. | |
| HARRIS COUNTY HOSPITAL DISTRICT d/b/a HARRIS HEALTH SYSTEM; BEN TAUB HOSPITAL; LYNDON B. JOHNSON HOSPITAL; QUENTIN MEASE COMMUNITY HOSPITAL; HARRIS COUNTY CLINICAL SERVICES, INC.; MEMORIAL HERMANN HEALTH SYSTEM; CHRISTUS HEALTH; CHRISTUS HEALTH GULF COAST; HCA HEALTHCARE; HCA GULF COAST DIVISION INC.; ST. JOSEPH MEDICAL CENTER, HOUSTON METHODIST; TEXAS CHILDREN'S HOSPITAL; ST. LUKE'S EPISCOPAL HEALTH SYSTEM; AFFILIATED MEDICAL SERVICES; BAYLOR COLLEGE OF MEDICINE; BAYLORMEDCARE; AND UT PHYSICIANS, | |
| Defendants. | |

## DEFENDANTS' CONSOLIDATED REPLY AND
## MEMORANDUM OF LAW IN SUPPORT

# **TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION & OVERVIEW OF ARGUMENT ..................................................... 1

I.    THE SAC CANNOT SURVIVE THE FCA'S PUBLIC DISCLOSURE
      BAR ......................................................................................................................... 3

      A.    Relator's Allegations are Based Upon Qualifying Public Disclosures ......... 4
      B.    Relator is Not an Original Source ................................................................. 9
            1.    Relator Fails to Provide Evidence of the Required Disclosure .......... 9
            2.    Relator Lacks "Direct and Independent" Knowledge ...................... 10
            3.    Relator is Not an Original Source Under the Post-Amended
                  Bar ................................................................................................... 13

II.   RELATOR'S RESPONSE FAILS TO ADDRESS DEFENDANTS'
      ARGUMENTS ON FALSITY ............................................................................... 14

III.  THE SAC FAILS TO PLEAD ANY PARTICULAR OR PLAUSIBLE
      FCA CLAIM .......................................................................................................... 15

      A.    The SAC Fails to Plead a Fraudulent Claim or Scheme under Rule
            9(b) or Rule 8(a). ........................................................................................ 15
      B.    Relator Fails to Plead a Reverse False Claim. ............................................ 18

IV.   RELATOR EFFECTIVELY CONCEDES LACK OF MATERIALITY ............. 19

V.    THE SAC FAILS TO PLEAD SCIENTER ......................................................... 20

VI.   RELATOR FAILS TO ALLEGE A CONSPIRACY ........................................... 21

CONCLUSION ................................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*U.S. ex rel. Baker v. Community Health Sys.*,
No. 05-270 (D.N.M.) .................................................................................. 6

*U.S. ex rel. Banigan v. PharMerica, Inc.*,
950 F.3d 134 (1st Cir. 2020) .................................................................... 10

*U.S. ex rel. Black v. Health & Hosp. Corp.*,
494 F. App'x 285 (4th Cir. 2012) ............................................................... 8

*U.S. ex rel. Campbell v. KIC Dev., LLC*,
No. EP-18-CV-193-KC, 2019 WL 6884485 (W.D. Tex. Dec. 10, 2019) .................. 19

*Car Carriers, Inc. v. Ford Motor Co.*,
745 F.2d 1101 (7th Cir. 1984) .................................................................... 9

*Clarian Health West, LLC v. Hargan*,
878 F.3d 346 (D.C. Cir. 2017) .................................................................. 14

*U.S. ex rel. Colquitt v. Abbott Labs*,
858 F.3d 365 (5th Cir. 2017) ...................................................................... 8

*U.S. ex rel. Colquitt v. Abbott Labs.*,
864 F. Supp. 2d 499 (N.D. Tex. 2012) ...................................................... 12

*U.S. ex rel. Colquitt v. Abbott Labs.*,
No. 3:06-cv-1769-M, 2015 WL 13670916 (N.D. Tex. July 24, 2015)...................... 11

*Destfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011) .................................................................... 17

*In re Digi Int'l, Inc., Sec. Litig.*,
14 F. App'x 714 (8th Cir. 2001) ............................................................... 21

*U.S. ex rel. Drummond v. BestCare Laboratories*,
950 F.3d 277 (5th Cir. 2020) (Resp. ) ....................................................... 14

*U.S. ex rel. Farmer v. City of Houston*,
No. Civ.A. H-03-3713,  2005 WL 1155111 (S.D. Tex. May 5, 2005)...................... 12

*Fed. Recovery Servs., Inc. v. United States*,
   72 F.3d 447 (5th Cir. 1995) ........................................................................ 6

*U.S. ex rel. Fisher v. JP Morgan Chase Bank N.A.*,
   413 F. Supp. 3d 569 (E.D. Tex. 2019) ....................................................... 13

*U.S. ex rel. Fitzgerald v. Novation, LLC*,
   No. 3:03-CV-1589-N, 2008 WL 9334966 (N.D. Tex. Sept. 17, 2008) ....................... 6

*U.S. ex rel. Fried v. West Indep. Sch. Dist.*,
   527 F.3d 439 (5th Cir. 2008) ...................................................................... 6

*Funk v. Stryker Corp.*,
   631 F.3d 777 (5th Cir. 2011) .................................................................... 20

*U.S. ex rel. Graves v. ITT Educ. Servs., Inc.*,
   284 F. Supp. 2d 487 (S.D. Tex. 2003) ...................................................... 22

*Green v. AmerisourceBergen Corp.*,
   No. 4:15-CV-379, 2017 WL 1209909 (S.D. Tex. Mar. 31, 2017) ................................ 3

*U.S. ex rel. Grubbs v. Ravikumar Kanneganti*,
   565 F.3d 180 (5th Cir. 2009) .................................................................... 16

*U.S. ex rel. Harman v. Trinity Indus. Inc.*,
   872 F.3d 645 (5th Cir. 2017) .................................................................... 19

*Harwin Braxton Centre, Inc. v. AmGuard Ins. Co.*,
   No. 4:19-cv-03175, 2020 U.S. Dist. LEXIS 34476 (S.D. Tex. Feb. 18,
   2020) ...................................................................................................... 17

*Health Choice Alliance, LLC, on behalf of United States v. Eli Lilly and
   Co., Inc.*,
   No. 5:17-CV-123-RWS-CMC, 2018 WL 4026986, at *46 (E.D. Tex.
   July 25, 2018)......................................................................................... 17

*U.S. ex rel. Hendrickson v. Bank of Am., N.A.*,
   343 F. Supp. 3d 610 (N.D. Tex. 2018), *aff'd*, 779 F. App'x 250 (5th Cir.
   2019) ...............................................................................................*passim*

*U.S. ex rel. Hernandez v. Team Fin., L.L.C.*,
   No. 2:16-CV-00432-JRG, 2020 WL 731446 (E.D. Tex. Feb. 13, 2020) ................... 16

*U.S. ex rel. Integra Med Analytics, LLC v. Baylor Scott & White Health*,
   No. 5:17-CV-886-DAE, 2019 WL 3713756 (W.D. Tex. Aug. 5, 2019),
   *aff'd*, No. 19-50818, 2020 WL 2787652 (5th Cir. May 28, 2020) ............................. 15

*U.S. ex rel. Jamison v. McKesson Corp.*,
   649 F.3d 322 (5th Cir. 2011) ................................................................. 4, 7

*U.S. ex rel. King v. Solvay S.A.*,
   No. H-06-2662, 2015 WL 925612 (S.D. Tex. Mar. 3, 2015) ........................ 8

*U.S. ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*,
   336 F.3d 346 (5th Cir. 2003) ....................................................................... 11

*U.S. ex rel. Lamers v. City of Green Bay*,
   168 F.3d. 1013 (7th Cir. 1999) .................................................................... 14

*Little v. Shell Exploration & Production Co.*,
   690 F.3d 282 (5th Cir. 2012) ......................................................................... 7

*U.S. ex rel. Lockey v. City of Dall., Tex.*,
   No. 3:11-cv-354-O, 2013 WL 268371 (N.D. Tex. Jan. 23, 2013)................... 7

*Lone Star fund V (U.S.), L.P. v. Barclays Bank PLC*,
   594 F.3d 383, 387 (5th Cir. 2010) ............................................................... 18

*In re Natural Gas Royalties*,
   562 F.3d 1032 (10th Cir. 2009) ..................................................................... 7

*Nobre on behalf of K.M.C. v. Louisiana Department of Public Safety*,
   935 F.3d 437, 442 (5th Cir. 2019) ............................................................... 10

*U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*,
   519 F. App'x 890 (5th. Cir. 2013) ............................................................... 16

*In re Parkcentral Global Litig.*,
   884 F. Supp. 2d 464 (N.D. Tex. 2012) ....................................................... 17

*U.S. ex rel. Porter v. Magnolia Health Plan, Inc.*,
   No. 18-60746, 2020 WL 1887791 (5th Cir. Apr. 15, 2020)........................ 20

*U.S. ex rel. Purcell v. MWI Corp.*,
   807 F.3d 281 (2015)..................................................................................... 21

*U.S. ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*,
   384 F.3d 168 (5th Cir. 2004) ........................................................... 11, 12, 13

*U.S. ex rel. Rigsby v. State Farm Fire & Casualty Co.*,
   794 F.3d 457 (5th Cir. 2015) ............................................................... 12

*Roebuck v. Dothan Sec., Inc.*,
   515 F. App'x 275 (5th Cir. 2013) ............................................................ 9

*Schindler Elevator Corp. v. U.S. ex rel. Kirk*,
   563 U.S. 401 (2011).................................................................................. 6

*U.S. ex rel. Schweizer v. Canon*,
   No. 4:16-CV-00582, 2020 WL 242520 (S.D. Tex. Jan. 16, 2020)............... 4

*U.S. ex rel. Silingo v. WellPoint, Inc.*,
   904 F.3d 667 (9th Cir. 2018) ............................................................... 17

*U.S. ex rel. Solomon v. Lockheed Martin Corp.*,
   878 F.3d 139 (5th Cir. 2017) ............................................................ 7, 8

*U.S. ex rel. Springfield Terminal Railway Co. v. Quinn*,
   14 F.3d 645 (D.C. Cir. 1994) ................................................................. 6

*Stennett v. Premier Rehab., LLC*,
   479 F. App'x 631 (5th Cir. 2012) .......................................................... 12

*Stepan v. CHRISTUS St. Vincent Reg'l Med. Corp. Ctr., et al.*,
   No. 1:11-cv-00572 (D.N.M) .................................................................... 6

*U.S. ex rel. Thomas v. St. Joseph Hospice LLC*,
   No. 2:16-CV-143-KS-MTP, 2019 WL 1271019 (S.D. Miss. Mar. 19,
   2019) .................................................................................................... 13

*U.S. ex rel. Tucker v. Christus Health*,
   No. 09-1819, 2012 WL 5351212 (S.D. Tex. Oct. 23, 2012) ..................... 17

*United States v. Catholic Health Initiatives*,
   312 F. Supp. 3d 584 (S.D. Tex. 2018) .................................................... 19

*United States v. Celgene Corp.*,
   226 F. Supp. 3d 1032 (C.D. Cal. 2016) .................................................. 19

*United States v. Crumb*,
   No. 15-0655-WS-N, 2016 WL 4480690 (S.D. Ala. Aug. 24, 2016)............ 18

*United States v. Dental Dreams, LLC*,
   307 F. Supp. 3d 1224 (D.N.M. 2018) ..................................................... 18

*United States v. Medco Health Solutions. Inc.*,
  777 F. App'x 30 (3d Cir. 2019) ..................................................... 12

*United States v. Southland Mgmt. Corp.*,
  326 F.3d 669 (5th Cir. 2003) ...................................................... 14

*Universal Health Servs., Inc. v. U.S.ex rel. Escobar*,
  136 S. Ct. 1989 (2016) .............................................................. 19

*U.S. ex rel. Winkelman v. CVS Caremark Corp.*,
  827 F.3d 201 (1st Cir. 2016) .............................................. 10, 13

## STATUTES

31 U.S.C. § 3729(a)(1)(G) ............................................................ 18

42 U.S.C.
  §§ 1320a-7k(d)(2)(A)-(B) ......................................................... 18
  §§ 1396b(w)(2)(A)-(B) .............................................................. 14

## RULES

Fed. R. Evid. 201 ........................................................................ 20

## TREATISES

2 Moore's Federal Practice – Civil § 12.34[2] ............................... 18

## REGULATIONS

42 C.F.R. § 433.54 ..................................................................... 14

84 Fed. Reg. 63,722-23 (Nov. 18, 2019) ...................................... 21

## INTRODUCTION & OVERVIEW OF ARGUMENT

Relator's case rests on the unsupported notion that Defendants tricked Texas into submitting false claims to the federal government.  *Texas has never supported this allegation*.  In fact, Texas is currently litigating against the federal government, actively defending claims and programs similar to those Relator challenges.  The State is taking legal positions that are the exact opposite of those Relator advances here.  *See* Defs' Cons. Mot. ("MTD") Ex. 1, Dkt. No. 121-1.

Rather than acknowledge and address this conflict, Relator quietly dismissed all of his Texas law claims.  Dkt. Nos. 128, 137.  That voluntary dismissal exposes his problem: Relator cannot bring claims on behalf of Texas because Texas disagrees with his theory of fraud.  More fundamentally, Relator cannot satisfy the elements of a False Claims Act ("FCA") suit challenging the Harris County Collaborative Program ("Program") when Texas and the federal government are litigating whether these programs are lawful.

Relator's case is also doomed because Relator has not brought a "secret" fraud to light.  The operation and details of the Program were well-known before Relator filed suit, specifically reviewed by the federal Centers for Medicare & Medicaid Services ("CMS"), and defended by Texas as legal at every turn.  Relator cannot avoid the FCA's broadly-applied public disclosure bar and he is not an original source.

The core allegation of fraud in Second Amended Complaint ("SAC") is straight-forward:

- Defendant private hospitals paid for medical staff to serve at public facilities operated by the Harris County Hospital District ("Hospital District").  SAC ¶ 7.

- Through this arrangement, the Hospital District experienced savings.  The Hospital District made intergovernmental transfers ("IGTs") to Texas.  SAC ¶ 19.

- Texas used IGTs to draw additional Federal Financial Participation ("FFP") from CMS and fund supplemental Medicaid payments to private hospitals.  SAC ¶ 85.

- Relator contends Texas was required to report the dollar amount of services private hospitals funded in the Hospital District facilities as "non-bona fide donations" on the CMS Form 64 Texas submitted to CMS.  SAC ¶ 78.  Relator alleges such reporting would have reduced FFP.  *Id.*

What is striking about Relator's theory is that it both recycles allegations that were in the public domain long before he filed the SAC and it is the exact opposite of the position Texas has taken in its very public dispute with CMS about its collaborative programs during the last decade (the "DAB Proceeding").

Recognizing these allegations conflict with Texas's position and are subject to the public disclosure bar, Relator highlights ancillary allegations about above-market compensation and services to indigent and non-indigent patients to try to differentiate the Program from the public disclosures.  *See* Relator's Resp. to Cons. Mot. to Dismiss ("Resp.") at 9-11, 24, 50-51, Dkt. No. 130.  These allegations have no bearing on his core theory.  Under Relator's interpretation of federal law, *any* payments by private hospitals for services at public hospitals to *any* patient—regardless of whether payments were fair market value or services were provided to non-indigent patients—

would constitute non-bona fide provider donations if private hospitals subsequently received supplemental Medicaid payments associated with the "donation."  SAC ¶¶ 79, 113.

Even with its embellishments, Relator's pleading is legally deficient. Amendment will not remedy its flaws and Defendants respectfully request the Court dismiss it with prejudice.

## I.   THE SAC CANNOT SURVIVE THE FCA'S PUBLIC DISCLOSURE BAR

The materials attached to Defendants' Consolidated Motion, which describe the Program and other similar programs, were public long before Relator filed suit.  Relator does not dispute this, and in fact concedes that these materials are qualifying sources under both versions of the public disclosure bar.  MTD § I.A.  Relator's claims are deficient under the public disclosure bar.

Relator cannot avoid the bar by arguing his case is entitled to a "highly deferential standard[]."  Resp. at 16.  The Pre-Amended Bar places the burden on Relator to establish jurisdiction.  While the Amended Bar removed this requirement, "[t]his is a difference without a distinction."  *U.S. ex rel. Hendrickson v. Bank of Am., N.A.*, 343 F. Supp. 3d 610, 623 (N.D. Tex. 2018), *aff'd*, 779 F. App'x 250 (5th Cir. 2019).  Even after the 2010 amendment, the relevant inquiry remains the same: "if there has been a disqualifying public disclosure, the lawsuit will be dismissed."  *Id*; *see also Green v. AmerisourceBergen Corp.*, No. 4:15-CV-379, 2017 WL 1209909, at *8 (S.D. Tex. Mar. 31, 2017) (under either version, analysis "fundamentally remains the same").

3

The Court may consider Relator's post-2010 claims under Rule 12(b)(6) and take judicial notice of the public disclosures, or under Rule 56, in which case the disclosures are extrinsic evidence Relator must rebut.  *U.S. ex rel. Schweizer v. Canon*, No. 4:16-CV-00582, 2020 WL 242520, at *4 (S.D. Tex. Jan. 16, 2020) ("[O]nce the Defendant had raised the public disclosure defense, the Plaintiff must 'produce evidence sufficient to show that there is a genuine issue of material fact as to whether his action was based on those public disclosures.'" (citing *U.S. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 327 (5th Cir. 2011))); *Hendrickson*, 343 F. Supp. 3d at 623 n.7; MTD at 16.  Contrary to Relator's suggestion (Resp. at 17), public disclosures are properly and routinely subject to judicial notice.  *See* MTD at 4.

## A.    Relator's Allegations are Based Upon Qualifying Public Disclosures

Relator attempts to avoid the bar by selecting a few isolated disclosures and asserting they are "general restatements of the applicable law," not "as detailed" as the SAC, and contain only "generalized information."  Resp. at 20-22, 26.  But when properly considered collectively, *Hendrickson*, 343 F. Supp. 3d at 626 & n.13, the disclosures reveal all crucial elements of Relator's case, including details the SAC supposedly brings to light (Resp. at 9-11):

| SAC Allegations | Example Corresponding Disclosure |
|---|---|
| A collaborative program existed in Harris County, with the purpose of generating increased federal matching funds.  SAC ¶ 7, 100. | "[P]rivate hospitals…throughout the state, including … Houston …were able to generate $264 million in local matching funds … to get the federal dollars." Ex. F at 2. |

4

| SAC Allegations | Example Corresponding Disclosure |
|---|---|
| The participants in this Program are the named Defendants.  SAC ¶ 15, 25-45. | Ex. Y (charting participants in ongoing collaborative programs and naming all private hospital Defendants). |
| "The scheme was founded on the existence of a *quid pro quo*."  Resp. at 9; SAC ¶¶ 10, 19. | Collaborative programs "may violate federal provider donation rules or ... may otherwise represent an **impermissible quid pro quo**[.]" Ex. F at 2; Ex. H at 1. |
| "The private hospitals **paid for the full cost of medical staffing** at the public hospitals," Resp. at 9, and "in exchange," "**[the Hospital District] uses the money it saves to increase the amount it transfers to the state Medicaid agency on behalf of the private hospitals.**" SAC ¶¶ 19, 114. | "[T]he **private hospitals would fund an expenditure** that had previously been borne by the public entity … (such as paying for indigent care or **paying physician groups to staff hospital departments**). The public entity might, at its discretion, transfer some of its tax-generated and other public funds to the state as the **non-federal share of supplemental payments to the hospitals**[.]" Ex. S at 5. |
| Defendants' arrangement was "**not a 'bona fide' donation** under Medicare requirements" and unlawfully caused government to "return[] **matched funds** to the state that are higher than the true amount of investment made by the state." SAC ¶¶ 20, 23, 109; Resp. at 10. | "CMS has identified a similar arrangement in Texas among various local governments, private hospitals, and non-profit organizations that constitutes a **non-bona fide donations** as described in the May 9, 2014 guidance. In this arrangement, a group of private hospitals indirectly assumed financial responsibilities once held by the local governments and, in exchange, received payments under the Medicaid program." Ex. P at 2.<br><br>"The **controversy** stems from a complex payment system that served as a workaround for the non-public hospitals to put up their own **matching funds** through the waiver, which the feds **initially intended to come from a local government** source." Ex. K at 1. |

This public information is "substantially similar" to Relator's claims, a comparison that must be given a "broa[d] sweep." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 408 (2011); *Hendrickson*, 343 F. Supp. 3d at 623-625; *U.S. ex rel. Fitzgerald v. Novation, LLC*, No. 3:03-CV-1589-N, 2008 WL 9334966, at *3 (N.D. Tex. Sept. 17, 2008) (test is "not onerous" and satisfied "so long as those claims 'are based at least in part on allegations already publicly disclosed,' even if relator 'uncovered some nuggets of new, i.e., non-public, information'" (citing *U.S. ex rel. Fried v. West Indep. Sch. Dist.*, 527 F.3d 439, 442 (5th Cir. 2008))).

The SAC is at least "partly based upon publicly disclosed allegations." *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 451 (5th Cir. 1995). As Defendants pointed out—and Relator left unaddressed—Relator copied sections of the DAB Proceeding into his pleading. MTD at 26 (citing SAC ¶ 113, Ex. BB at 10). And in his responses to Defendants' individual motions to dismiss, Relator points to additional public disclosures he says describe arrangements similar enough to the Program to make Defendants "aware that the[ir] conduct was unlawful." Dkt No. 131 at 7-8 (citing *Stepan v. CHRISTUS St. Vincent Reg'l Med. Corp. Ctr., et al.*, No. 1:11-cv-00572 (D.N.M)); *U.S. ex rel. Baker v. Community Health Sys.*, No. 05-270 (D.N.M.)). The SAC itself characterizes *Baker* as "strikingly similar to the instant action." SAC ¶ 211.

Relator mischaracterizes the operative question as "whether *the SAC's allegations* have been publicly disclosed." Resp. at 15. But Relator's own case, *U.S. ex rel. Springfield Terminal Railway Co. v. Quinn*, 14 F.3d 645, 654-55 (D.C. Cir. 1994) (Resp. at 19), asks merely "whether the relator *could have* synthesized an inference of

fraud from the public disclosures." *U.S. ex rel. Solomon v. Lockheed Martin Corp.*, 878 F.3d 139, 145 (5th Cir. 2017).   Applying the disclosure bar formula from *Springfield*, "X" represents Defendants' (and Texas's) public position that the Program is lawful (Exs. L, O, Q, S, V); "Y" represents the public discussion regarding the collaborative programs in Texas, including Harris County, possibly involving non-bona fide donations and impermissible *quid pro quo* arrangements in order to obtain increased FFP (Exs. F-K, M, P, U, X, BB); and the resulting "Z" is the "fraud" alleged in the SAC that Defendants knowingly engaged in a fraudulent scheme to violate these same federal laws.

Here, certain public disclosures set forth *actual allegations of fraud* and named every private hospital defendant.  Ex. Y; *see Jamison*, 649 F.3d at 329 ("[T]he public disclosures need not name particular defendants so long as they 'alerted the government to the industry-wide nature of the fraud and enabled the government to readily identify wrongdoers through an investigation.'" (citing *In re Natural Gas Royalties*, 562 F.3d 1032, 1039 (10th Cir. 2009))).

Relator's characterization of *Little v. Shell Exploration & Production Co.*, 690 F.3d 282, 293 (5th Cir. 2012) is similarly misleading.  Rather than "Fifth Circuit law that 'publicly disclosed allegations' must be 'as detailed as those in the relator's complaint'" (Resp. at 21, 23), *Little* states that the bar applies where disclosures describe "the fraudulent scheme and the types of actors involved in it such that the defendant's misconduct would have been readily identifiable." *Id.* (internal quotations omitted); *see U.S. ex rel. Lockey v. City of Dall., Tex.*, No. 3:11-cv-354-O, 2013 WL

268371, at *8 (N.D. Tex. Jan. 23, 2013) (describing *Little* as "explaining correlation in scope is a helpful inquiry, although not the only question"); *U.S. ex rel. King v. Solvay S.A.*, No. H-06-2662, 2015 WL 925612, at *8 (S.D. Tex. Mar. 3, 2015) (a disclosure need not "connect all the dots" or "highlight[] exactly how the alleged wrongdoing resulted in" fraud in order to "set the government on the trail of fraud"); *U.S. ex rel. Black v. Health & Hosp. Corp.*, 494 F. App'x 285, 294 (4th Cir. 2012) (public disclosure need not match allegations' specificity).

Lastly, Relator maintains he "supplies critical missing links between public information and the existence of fraud," pointing to the SAC's allegations on: (1) above-market payments to physicians, and (2) services provided to indigent and non-indigent patients.  (Resp. at 10-11, 24, 27).  This argument fails factually and legally.  Relator acknowledges "[t]he crux of the SAC is that the Program's illegal purpose was to tie the private hospitals' donations to IGTs that would trigger the federal government's payment of supplemental Medicaid funds back to the private hospitals[.]" Resp. at 13; *see* SAC ¶¶ 18-19, 100-05, 114.  Thus, as in *U.S. ex rel. Colquitt v. Abbott Labs*, 858 F.3d 365 (5th Cir. 2017) and *Solomon*, 878 F.3d 139 (Resp. at 25-26), these added details about above-market payments and services to non-indigent patients are not critical to the alleged fraud.  MTD at 29.  Moreover, these secondary allegations *are* reflected in public disclosures.  *See, e.g.*, Ex. G at 4 (private hospitals "pumped more money into the program"); Ex. S at 5 (disclosure *to CMS* that private hospitals "fund an expenditure that had previously been borne by the public entity … (such as paying for indigent care *or paying physician groups to staff hospital departments*)")

(emphasis added).  Relator points to a few out-of-circuit cases (Resp. at 22, 27), each of which involved general reports or court filings that stand in stark contrast to the detailed public disclosures here.

The disclosures document the precise concern Relator articulates—public-private hospital partnerships using *quid pro quo* arrangements to obtain increased federal Medicaid payments—and specifically reference Harris County and the private hospitals.  Exs. F-BB.  Relator's case should be dismissed.

### B.    Relator is Not an Original Source

Relator is not an original source under either version of the Bar because he failed to plead evidence of the required voluntary disclosure prior to filing suit.  MTD at 30; Resp. at 35, 37.  His arguments on the remaining elements are equally deficient.

### 1.    Relator Fails to Provide Evidence of the Required Disclosure

Relator admits the SAC contains no suggestion he voluntarily disclosed information to the government before filing suit.  Resp. at 29.  Both versions of the Bar require this pre-filing disclosure.  *Hendrickson*, 343 F. Supp. 3d at 630 ("[U]nder both statutes, whether or not the relator provides information voluntarily is dispositive.").  Relator's unverified assertion that he "actually did share his information with the Department of Justice ... before filing suit" is insufficient.  Resp. at 29, 35.  "[A] complaint [cannot] be amended by briefs in opposition to a motion to dismiss." *Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).

Despite admitting he has the burden to satisfy all elements of the Pre-Amended Bar in order to establish jurisdiction, Resp. at 35-36, Relator argues he is not required to offer evidence to establish original source status under the Amended Bar. Resp. at 29-30. Not true. *See Hendrickson*, 343 F. Supp. 3d at 629-30 (burden on relator to show he is "original source" under both versions of bar, and under Amended Bar relator must respond to defendant's prima facie showing with *sufficient evidence* demonstrating triable issue regarding relator's original source status); *U.S. ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 212 (1st Cir. 2016) (relators' "claim to original source status" depended "on both their complaint and the declarations submitted as part of their opposition").

Relator points to *Nobre on behalf of K.M.C. v. Louisiana Department of Public Safety*, 935 F.3d 437, 442 (5th Cir. 2019), but there the Fifth Circuit found error in the district court's *refusal* to consider extrinsic sources when deciding whether plaintiffs could overcome defendants' statute of limitations defense. *Id.* Here, Relator has not submitted *any* extrinsic sources or documents. He cannot qualify as an original source through silence.

### 2. Relator Lacks "Direct and Independent" Knowledge

Relator's claims are not rooted in "direct and independent" knowledge. MTD at 31-33. Relator's citation to *U.S. ex rel. Banigan v. PharMerica, Inc.*, 950 F.3d 134, 145-46 (1st Cir. 2020), is a strawman—it is an entirely uncontroversial point that a relator can have direct knowledge without participating in or observing every aspect of fraud. (Resp. at 37). But that is not Defendants' point; rather Defendants argue that

his knowledge of the core allegations was not "gained by [his] own efforts." *U.S. ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336 F.3d 346, 355 (5th Cir. 2003).  Relator's pleading relies on the "efforts of others," including 2014 guidance from CMS and filings in the DAB Proceeding.  Even his allegations related to provider compensation are secondhand from co-workers.  SAC ¶¶ 117, 174, 185.

Relator purports to have personally observed "the impacts" of the agreements. (Resp. at 36-37).  But that is not "knowledge" of the Program—formed years *before* Relator began working for the Hospital District, SAC ¶ 100—that Relator uncovered by his own efforts.  *U.S. ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.,* 384 F.3d 168, 178-79 (5th Cir. 2004) (relator's knowledge not "direct" when "based on research and review of public records, [and] not, with minor exceptions, her own observation"); *U.S. ex rel. Colquitt v. Abbott Labs.*, No. 3:06-cv-1769-M, 2015 WL 13670916, at *6 (N.D. Tex. July 24, 2015); *Rockwell*, 549 U.S. at 476.  Moreover, his purported knowledge about above-market salaries and medical directorships (Resp. at 30) does not establish direct and independent knowledge about the core fraud alleged.

Notably, Relator claims he knows from "personal observations" how each Defendant carried out the alleged scheme.  But the four cited SAC paragraphs allege only that he had concerns about whether a market analysis was performed for the 2012 contract between the Hospital District and Affiliated Medical Services ("AMS").  Resp. at 38 (citing SAC ¶¶ 119, 175-77).  Moreover, Relator's assertions do not show how being a contract administrator *at the Hospital District* provided him firsthand knowledge into how any other Defendant violated the FCA.  *Rockwell*, 549 U.S. at 475-

76 (no direct and independent knowledge of alleged fraud where relator was not employed by defendant).

Relator's other cases—*U.S. ex rel. Rigsby v. State Farm Fire & Casualty Co.*, and *U.S. ex rel. Farmer v. City of Houston* (Resp. at 36-37) —only highlight the SAC's deficiencies.  The *Rigsby* relators had direct knowledge because they were asked to manipulate information in furtherance of the fraud, and personally discovered non-public documentation defendant tried to bury related to the fraud.  794 F.3d 457, 464, 474 (5th Cir. 2015).  And the *Farmer* relator's "own investigation demonstrated a new and undisclosed relationship between disclosed facts" that suggested fraud "where that fraud might otherwise [have] go[ne] unnoticed."  No. Civ.A. H-03-3713, 2005 WL 1155111, at *5 (S.D. Tex. May 5, 2005) (citing *Reagan*, 384 F.3d at 179).  By contrast, Relator re-hashes core allegations already made public and repeats non-essential contentions regarding provider compensation learned from co-workers.  *See* SAC ¶¶ 13, 100-05, 113, 117 140-42, 174-77, 214-16.

Finally, Relator's suggestion that only "outsiders" are foreclosed from qualifying as original sources (Resp. at 39) is legally wrong.  *See Stennett v. Premier Rehab., LLC*, 479 F. App'x 631, 635-36 (5th Cir. 2012) (employee of defendant not original source); *U.S. ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 525 (N.D. Tex. 2012) (same); *United States v. Medco Health Solutions. Inc.*, 777 F. App'x 30, 34 (3d Cir. 2019) (applying the same test as the Fifth Circuit in *Rigsby*, and affirming that a Medco employee was not a direct source because "he learned [the relevant

information] second-hand from other Medco employees and reviewing the agreements already in place").

### 3.    Relator is Not an Original Source Under the Post-Amended Bar

Relator argues his information about above market salaries and medical directorships shows how the Program was "especially abusive and wasteful" and reveals "far more egregious[]" conduct.  Resp. at 33.  However, this information adds only "a level of detail to knowledge that was already in the public domain," *Winkelman*, 827 F.3d at 210, not anything *essential* to the core fraud alleged.  In other words, these additional allegations have nothing to do with whether the claims submitted by Texas to CMS were false.

Nor do Relator's alleged "details" provide important insight into the essence of the alleged fraud disclosed publicly.  *See U.S. ex rel. Fisher v. JP Morgan Chase Bank N.A.*, 413 F. Supp. 3d 569 (E.D. Tex. 2019) (relator based fraud claims on non-public loan modification contracts that revealed fraud); *U.S. ex rel. Thomas v. St. Joseph Hospice LLC*, No. 2:16-CV-143-KS-MTP, 2019 WL 1271019 (S.D. Miss. Mar. 19, 2019) (relator provided substantive details regarding "improper referrals" alleged in another complaint).  At most, Relator provides details on how certain Defendants used increased supplemental Medicaid payments, none of which amount to "additional compelling facts" or "a new and undisclosed relationship" regarding the essence of a scheme itself.  *Hendrickson*, 343 F. Supp. 3d at 630 (citing *Reagan*, 384 F.3d at 179).

## II.   RELATOR'S RESPONSE FAILS TO ADDRESS DEFENDANTS' ARGUMENTS ON FALSITY

Relator does not dispute that a violation of sub-regulatory guidance cannot serve as the basis for an FCA claim, nor does he address the cases and DOJ Manual supporting this proposition.  MTD at 35-37.  In fact, Relator's own authority, *U.S. ex rel. Drummond v. BestCare Laboratories*, 950 F.3d 277, 281-82 (5th Cir. 2020) (Resp. at 42), makes clear that CMS guidance is a "policy statement" with "no binding legal effect" and, instead, "[t]he statutory text is what matters."  *Drummond*, 950 F.3d at 281 (citing *Clarian Health West, LLC v. Hargan*, 878 F.3d 346, 357 (D.C. Cir. 2017)).

Relator claims "the SAC alleges that Defendants violated the [Non-Bona Fide Donation ("NBFD")] Statute and regulations, not the Mann Letter."  Resp. at 42.  But the Mann Letter contains the only provisions addressing the conduct detailed in the SAC.  SAC ¶¶ 79-80, 113, 213 (Mann Letter clarifies "hold harmless provision[s]" and whether arrangements like the Program are "bona fide").  The NBFD Statute and regulations alone contain no such clarifications.  42 U.S.C. §§ 1396b(w)(2)(A)-(B) (explaining how federal government reimburses state for Medicaid expenditures); 42 C.F.R. § 433.54 (defining bona fide donations).  Indeed, Texas's interpretation of these rules conflicts with Relator's contentions, raising another impediment to pleading falsity. *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 684 (5th Cir. 2003) (citing *U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d. 1013, 1018 (7th Cir. 1999) ("[I]mprecise statements or differences in interpretation growing out of a disputed legal question are [similarly] … not false under the FCA.")).  The only basis to claim the

Program violates the statute and regulations is the Mann Letter, guidance Texas is challenging in federal court.  MTD at 11-12.

## III.    THE SAC FAILS TO PLEAD ANY PARTICULAR OR PLAUSIBLE FCA CLAIM

### A.    The SAC Fails to Plead a Fraudulent Claim or Scheme under Rule 9(b) or Rule 8(a).

Relator addresses Defendants' Rule 8(a) argument in passing (Resp. at 39, 57-58), and fails to distinguish nearly all cases cited by Defendants (MTD at 41-42). Relator attempts to differentiate *U.S. ex rel. Integra Med Analytics, LLC v. Baylor Scott & White Health*, No. 5:17-CV-886-DAE, 2019 WL 3713756, at *3-4, 6 (W.D. Tex. Aug. 5, 2019), *aff'd*, No. 19-50818, 2020 WL 2787652 (5th Cir. May 28, 2020), claiming "CMS has never endorsed" Defendants' conduct.  Resp. at 58.  But the SAC acknowledges CMS continued to pay FFP in connection with the Program for almost a decade.  SAC ¶¶ 87-100; *see* Ex. S. at 10 n.39.  Based on Defendants' reasonable interpretation, Texas's support, and CMS's continued payment, Defendants' behavior is consistent with a "legal and obvious alternative explanation," rather than a scheme to defraud.  *Integra*, 2019 WL 3713756, at *4.

Relator's response to Defendants' Rule 9(b) arguments (MTD at 37-40) is similarly unpersuasive.  Relator contends Defendants' 9(b) argument is "contradicted" (Resp. at 12) by their position that Relator's fraud was publicly disclosed.  But the standards of the public disclosure bar and Rule 9(b) are different, and the SAC fails to provide the particularized allegations of fraud required by the latter.  For example, Relator does not identify "an actually submitted false claim" or an alleged scheme to

submit false claims and details leading to a strong inference that those claims were submitted.  Resp. at 39-41.  Relator claims the SAC identifies "at least three false statements and claims" (Resp. at 42-43) but the allegations cited are general descriptions of the Program and Medicaid regime (SAC ¶¶ 18, 63–153) and conclusory allegations of fraud (SAC ¶¶ 22–23, 154, 221-23, 232-48).  *See U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp*., 519 F. App'x 890, 895 (5th. Cir. 2013) (dismissing FCA claim where relator's "allegations of scheme to submit fraudulent claims are entirely conclusory").

Nor does the SAC allege a scheme to defraud with Rule 9(b) particularity.  MTD at 44-45.  The SAC may reference time, location, and non-particularized groups of defendants (Resp. at 45-47), but these are not "particular details" of a scheme or "reliable indicia that lead to a strong inference that claims were actually submitted." *U.S. ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 190-91 (5th Cir. 2009).  Unlike the cases cited by Relator, the SAC contains no "specific or representative examples" of false claims submitted by any defendant.  *U.S. ex rel. Hernandez v. Team Fin., L.L.C.*, No. 2:16-CV-00432-JRG, 2020 WL 731446, at *7-8 (E.D. Tex. Feb. 13, 2020) ("[R]elator must at least allege a representative sample or an instance of submission"); *Grubbs*, 565 F.3d at 192 (alleging non-public, firsthand details of alleged scheme, including "specific dates" of false claims and "the type of medical service").  Finally, Relator's invocation of allegedly above-market payments paid by Harris County Clinical Services ("HCCS") to AMS is a strawman, as nothing about the

amount paid by HCCS to AMS impacts the propriety of the claims submitted by Texas under the Program.

Relator further fails to set forth sufficient allegations as to each Defendant. Relator acknowledges that the SAC relies on generalized allegations against "'Defendants' as a group," but argues there is "nothing wrong with doing so." Resp. at 58. However, his principal (out-of-circuit) authority, *U.S. ex rel. Silingo v. WellPoint, Inc.*, holds that it is "not enough to 'lump' together *dissimilar* defendants and assert that "everyone did everything." 904 F.3d 667, 677 (9th Cir. 2018) (citing *Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011)). The conduct of the fifteen Defendants—even within Relator's sub-categories—is not identical. For example, Relator lumps all "private hospitals" together even though only some were members of HCCS and original signatories to the Affiliation Agreement. While allegations "that Defendants are inter-related and that they acted together does not alone require dismissal under Rule 9(b)," (Resp. at 58 (citing *U.S. ex rel. Tucker v. Christus Health*, No. 09-1819, 2012 WL 5351212, at *4 (S.D. Tex. Oct. 23, 2012))), the SAC fails to "segregate the alleged wrongdoing of one [defendant] from another." *In re Parkcentral Global Litig.*, 884 F. Supp. 2d 464, 471 (N.D. Tex. 2012); *see also Health Choice Alliance, LLC, on behalf of United States v. Eli Lilly and Co., Inc.*, No. 5:17-CV-123-RWS-CMC, 2018 WL 4026986, at *46 (E.D. Tex. July 25, 2018) (complaint "repeatedly [made] undifferentiated allegations about all defendants with respect to the schemes"); *see also Harwin Braxton Centre, Inc. v. AmGuard Ins. Co.*, No. 4:19-cv-03175, 2020 U.S. Dist. LEXIS 34476, at *9 (S.D. Tex. Feb. 18, 2020) (dismissal under Rule 9(b) where

17

Complaint made "no specific allegation" against defendant). The "everyone did everything" or "shotgun approach" pleading does not satisfy Rule 9(b). *Hendrickson*, 343 F. Supp. 3d at 633.

### B.    Relator Fails to Plead a Reverse False Claim.

The SAC fails to identify any obligation to "pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). Relator's effort to do so in his Response is procedurally improper and meritless. Relator alleges for the first time, in his Response, that Defendants violated the statutory provision regarding overpayment, but it appears nowhere in the SAC. Resp. at 55-56 (citing 42 U.S.C. §§ 1320a-7k(d)(2)(A)-(B)); 2 Moore's Federal Practice – Civil § 12.34[2] ("The court may not … take into account additional facts asserted in a memorandum opposing the motion to dismiss"); *Lone Star fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (same).

Relator does not allege Defendants failed to comply with an obligation to return funds to the government. Instead, he argues Defendants "concealed the fact" they received amounts "higher than the amounts actually owed." Resp. at 56. Recasting direct FCA violations does not state a reverse false claim, as explained by Defendants' cases (MTD at 43)—none of which Relator addresses. Relator cites cases that do not apply (Resp. at 55-56), as their pleadings allege that defendants: (1) had an obligation to repay funds obtained through fraudulent billing practices; and (2) refused to audit or investigate after being alerted to fraudulent billing. *United States v. Crumb*, No. 15-0655-WS-N, 2016 WL 4480690, at *4 (S.D. Ala. Aug. 24, 2016); *United States v.*

18

*Dental Dreams, LLC*, 307 F. Supp. 3d 1224, 1244-45 (D.N.M. 2018).  These cases highlight the allegations missing from Relator's SAC, which does not reference any obligation or overpayment.  SAC ¶ 246.

## IV.    RELATOR EFFECTIVELY CONCEDES LACK OF MATERIALITY

Relator cannot satisfy the FCA's "rigorous" and "demanding" materiality requirement.  *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 1996, 2003-04 n.6 (2016).  In fact, his SAC acknowledges the federal government was aware of, and involved with, the structure of the Program for more than a decade, and that CMS continued to make payments to Texas in connection with the Program, *even after learning of the alleged statutory violations*.  MTD at 44 (citing SAC ¶¶ 221-23). That acknowledgement ends the materiality inquiry.  *U.S. ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 663 (5th Cir. 2017) ("[C]ontinued payment by the federal government after it learns of the alleged fraud substantially increases the burden on the relator in establishing materiality."); *United States v. Catholic Health Initiatives*, 312 F. Supp. 3d 584, 605 (S.D. Tex. 2018) (FCA claim dismissed for lack of materiality where "[n]othing in Relators' filings suggests that the government would stop the flow of funds … if it knew the truth").

The SAC's allegations stand in stark contrast to Relator's cases.  *See U.S. ex rel. Campbell v. KIC Dev., LLC*, No. EP-18-CV-193-KC, 2019 WL 6884485, at *10-12 (W.D. Tex. Dec. 10, 2019) (Government intervened and alleged it wouldn't have entered contracts "had it known that [d]efendants misrepresented their cost and profit structure, and planned to siphon off millions of dollars"); *United States v. Celgene*

*Corp.*, 226 F. Supp. 3d 1032, 1050-51 (C.D. Cal. 2016) (no evidence CMS knew of non-compliance and continued payment).  Relator cannot argue that the government would have acted differently "had it known" about the Program when the government *did in fact know about the Program.  See U.S. ex rel. Porter v. Magnolia Health Plan, Inc.*, No. 18-60746, 2020 WL 1887791, at *4 (5th Cir. Apr. 15, 2020) (government "took no action" and continued payments and contract renewals after informed of alleged statutory violations).  As explained above, CMS reviewed the Program in light of Relator's exact allegations.  Ex. S. at 10 n.39.

As Relator's authority confirms, where, as here, the government failed to take remedial action, made continued payments to Texas with knowledge of the alleged violations, and declined to intervene, Relator cannot plead materiality.

## V.   THE SAC FAILS TO PLEAD SCIENTER

Relator attempts to deflect rather than address Defendants' *Safeco* argument. Resp. at 50-51.  The fact that CMS and Texas—partners in funding and implementing Medicaid—*disagree* on whether particular arrangements constitute non-bona fide donations makes plain that the relevant regulations are subject to various reasonable interpretations.  MTD at 10-12, 47-48; Ex. 1.  Defendants highlighted several exhibits reflecting Texas's position, which are subject to judicial notice because the public disclosures were submitted for the *fact* of their contents, not the *truth* of their contents. Fed. R. Evid. 201; *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

Contrary to Relator's assertions (Resp. at 49-50), CMS's 2019 proposed rule confirms the ambiguity as to whether the donations violated the NBFD Statute—stating

explicitly the need to "clarify[] the regulatory language."  CMS Proposed Rule, 84 Fed. Reg. 63,722-23 (Nov. 18, 2019).  While Relator attempts to distinguish other Texas programs at the margins (Resp. at 51), he does not (and cannot) dispute that Texas has always maintained the legality of its collaborative programs, taking the opposite position Relator advances.  Under *Safeco* and its progeny, FCA liability cannot attach. MTD at 44-45.

Relator's other arguments are unavailing.  He alleges a law firm created the program and investigated non-compliance, (SAC ¶¶ 108, 189 203; Resp. at 47), but that accusation cuts *against* his allegation of scienter.  *In re Digi Int'l, Inc., Sec. Litig.*, 14 F. App'x 714, 717 (8th Cir. 2001) (finding that consultation with counsel tends to negate scienter).  Furthermore, Relator's argument about "concealment" efforts, as well as "above-FMV salaries and sham medical directorships" (Resp. at 48-49) is belied by facts and law.  A "firewall" compliance policy, generation of unused reports, and above-market provider compensation do not provide "specific facts" of knowing fraud. *Hendrickson*, 343 F. Supp. 3d at 635-36.  Moreover, under the *Safeco* line of cases, when a defendant adopts reasonable interpretation of a regulation, evidence of subjective intent *cannot* support scienter.  *U.S. ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 290 (2015) (subjective intent irrelevant when defendant seeks to defeat finding of scienter based on reasonable interpretation).

## VI.     RELATOR FAILS TO ALLEGE A CONSPIRACY

Fatally for Relator's conspiracy claim, he points to no allegations that an agreement existed "to get a false or fraudulent claim allowed or paid by the United

States" or that any Defendant performed "any act to effect the object of the conspiracy." *U.S. ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487, 509 (S.D. Tex. 2003). Relator points only to facets of Defendants' arrangement to increase Medicaid funds and asks this Court to make the "reasonable inference" that a conspiratorial agreement existed.   Resp. at 57.   When Relator describes regular business activities, such as invoice preparation and tracking (SAC ¶¶ 121-23), and actions of a few persons employed by one Defendant (SAC ¶¶ 124-25, 140-44, 192-94), there is no reasonable inference of conspiracy to defraud the government.

## CONCLUSION

Relator's allegations are barred by the public disclosure bar and fail to state an FCA claim.   The SAC should be dismissed with prejudice.


[[SIGNATURE PAGES FOLLOW]]

Dated:  July 15, 2020

**LATHAM & WATKINS LLP**

By:    /s/ Abid R. Qureshi      
Abid R. Qureshi (admitted *pro hac vice*)
Attorney-in-Charge
DC Bar No. 459227
555 Eleventh St., NW
Suite 1000
Washington, DC 20004
Phone: 202-637-2200
Fax: 202-637-2201
abid.qureshi@lw.com

*Counsel for Defendants Harris County Clinical Services, Inc., Memorial Hermann Health System, CHRISTUS Health, CHRISTUS Health Gulf Coast, HCA Healthcare, Inc., HCA Gulf Coast Division, Inc., and St. Luke's Episcopal Health System*

**OF COUNSEL:**
Alice S. Fisher (admitted *pro hac vice*)
Anne W. Robinson (admitted *pro hac vice*)
555 Eleventh St., NW, Suite 1000
Washington, DC 20004
Phone: 202-637-2200
Fax: 202-637-2201
alice.fisher@lw.com
anne.robinson@lw.com

Katherine A. Lauer (admitted *pro hac vice*)
12670 High Bluff Drive
San Diego, CA 92130
Phone: 858-523-5400
Fax: 858-523-5450
katherine.lauer@lw.com

David Isaak
S.D. Tex. No. 26694
SMYSER KAPLAN & VESELKA, LLP
717 Texas Avenue
Suite 2800
Houston, TX 77002
Phone: 713-221-2300
Fax: 713-221-2320
disaak@skv.com

Dated: July 15, 2020

**JACKSON WALKER LLP**

By: ___/s/ Jay Dewald_____
Jay Dewald
Attorney-in-Charge
TX Bar No. 24001990
JACKSON WALKER LLP
2323 Ross Avenue
Dallas, TX 75201
Phone: 214-953-6000
Fax: 214-242-4613
jdewald@jw.com

*Counsel for Defendant Harris County*
*Hospital District*

**OF COUNSEL:**

Erica Benites Giese
TX Bar No. 24036212
Stephen Calhoun
TX Bar No. 24069457
112 East Pecan St., Suite 2400
San Antonio, TX 78205
Phone: 210-978-7700
Fax: 210-242-4613
egiese@jw.com
scalhoun@jw.com

Dated: July 15, 2020                    **MCDERMOTT WILL & EMERY**

By: ___/s/ Mark Pearlstein_____
Mark Pearlstein (admitted *pro hac vice*)
Attorney-in-Charge
MA Bar No. 542064
28 State Street
Suite 3400
Boston, MA 02109
Phone: 617-535-4425
Fax: 617-535-3800
mpearlstein@mwe.com

*Counsel for Defendant St. Joseph Medical Center*

Dated: July 15, 2020

**DENTONS US LLP**

By:   /s/ Sean Cenawood
Sean Cenawood (admitted *pro hac vice*)
Attorney-in-Charge
NY Bar No. 2463750
1221 Avenue of the Americas
New York, NY 10020-1089
Phone: 212-768-6700
Fax: 212-768-6800
sean.cenawood@dentons.com

*Counsel   for   Defendant   Houston Methodist*

**OF COUNSEL:**

Charles A. Luband (admitted *pro hac vice*)
Stephen Della Fera (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Phone: 212-768-6700
Fax: 212-768-6800
charles.luband@dentons.com
stephen.dellafera@dentons.com

Samantha L. Groden (admitted *pro hac vice*)
One Market Plaza Spear Tower
24th Floor
San Francisco, CA 94105
Phone: 415-882-5000
Fax: 415-882-0300
samantha.groden@dentons.com

Casey W. Doherty
TX Bar No. 24078431
1221 McKinney Street, Suite 1900
Houston, Texas 77010-2006
Phone: 713-658-4600
Fax: 713-739-0834
casey.doherty@dentons.com

Dated: July 15, 2020                    **REED SMITH LLP**

                                        By:  ___/s/ Frederick Robinson_____
                                        _____
                                        Frederick Robinson (admitted *pro hac
                                        vice*)
                                        Attorney-in-Charge
                                        DC Bar No. 367223
                                        1301 K Street, NW
                                        Suite 1000 - East Tower
                                        Washington, DC 20005
                                        Phone: 202-414-9200
                                        Fax: 202-414-9299
                                        frobinson@reedsmith.com

                                        *Counsel for Defendant Texas Children's
                                        Hospital*

**OF COUNSEL:**

Sara A. Brinkmann
TX Bar No. 24069919
811 Main Street
Suite 1700
Houston, TX 77002-6110
Phone: 713-469-3800
Fax: 713-469-3899
sbrinkmann@reedsmith.com

Dated: July 15, 2020

**MORGAN LEWIS & BOCKIUS LLP**

By: ___/s/ B. Scott McBride_____

B. Scott McBride
Attorney-in-Charge
TX Bar No. 24002554
scott.mcbride@morganlewis.com
1000 Louisiana Street
Suite 4000
Houston, TX 77002
Phone: 713-890-5744
Fax: 713-890-5001

*Counsel for Defendants Affiliated Medical Services, Inc. and UT Physicians*

**OF COUNSEL:**

John Petrelli
TX Bar No. 24056125
Winstol Carter, Jr.
TX Bar No. 03932950
1000 Louisiana St.
Suite 4000
Houston, TX 77002
Phone: 713-890-5744
Fax: 713-890-5001
John.petrelli@morganlewis.com
winn.carter@morganlewis.com

28

Dated: July 15, 2020

**KING & SPALDING, LLP**

By:   /s/ Jeremiah J. Anderson
Jeremiah J. Anderson
Attorney-in-Charge
TX Bar No. 24040432
1100 Louisiana
Suite 4000
Houston, TX 77002
Phone: 713-276-7306
Fax: 713-751-3290
jjanderson@kslaw.com

*Counsel for Defendants Affiliated Medical Services, Inc. and Baylor College of Medicine*

**OF COUNSEL:**

Adam Robison
TX Bar No. 24035497
Mandie M. Cash
TX Bar No. 24097471
1100 Louisiana
Suite 4000
Houston, TX 77002
Phone: 713-276-7306
Fax: 713-751-3290
arobison@kslaw.com
mcash@kslaw.com

## CERTIFICATE OF WORD COUNT

I hereby certify that, pursuant to the Honorable Charles R. Eskridge III's Court Procedures §18(c), this brief complies with volume limitations because this brief contains 5,736 words, as identified by Microsoft Word, excluding the parts of the brief exempted in §18(c).

/s/ *Abid R. Qureshi*
Abid R. Qureshi

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to counsel of record for all parties via the Court's CM/ECF filing system on this 15th day of July 2020.

/s/ *Abid R. Qureshi*
Abid R. Qureshi